# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In re UNDER ARMOUR                      *
SECURITIES LITIGATION                                Civil Action No. RDB-17-388
                                        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

As this Court noted in its Memorandum Opinion of January 22, 2020 (ECF No. 139), the basic allegation in this punitive class action is that the Defendants Under Armour, Inc. ("Under Armour") and its former Chief Executive Officer Kevin Plank ("Plank") (collectively "Defendants") misrepresented the level of demand for Under Armour products. Previously, this Court has dismissed Plaintiffs' claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"), as well as Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). Nevertheless, during the pendency of an appeal to the United States Court of Appeals for the Fourth Circuit (ECF No. 102), the Wall Street Journal published two articles reporting that Under Armour was the subject of investigations by the Securities and Exchange Commission ("SEC"). Based on this new evidence, this Court conducted a hearing and ultimately granted a Motion for Relief from its earlier rulings upon a remand from the United States Court of Appeals for the Fourth Circuit. (ECF No. 140.) The Fourth Circuit accordingly remanded this case. (ECF No. 145.) After having reviewed the submissions of the parties and heard argument of counsel during a telephonic hearing on September 14, 2020, this Court granted motions for consolidation and allowed the filing of a Third Amended Complaint. (ECF No. 150.)

1

Accordingly, on October 14, 2020, Lead Plaintiff Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("Aberdeen" or "Lead Plaintiff") and Plaintiffs Monroe County Employees' Retirement System and KBC Asset Management (collectively, "Plaintiffs") filed the Consolidated Third Amended Complaint for violations of the federal securities laws ("TAC") against Defendants Under Armour and Plank. (ECF No. 153.)  On December 4, 2020, the Defendants filed a Motion to Dismiss (ECF No. 159), to which the Plaintiffs filed a response in opposition (ECF No. 160).  On May 3, 2021, while that motion remained pending, the SEC entered an Order instituting cease-and-desist proceedings against Under Armour for violations of various federal securities laws and ordering Under Armour to pay a $9,000,000 civil penalty.  (*See* ECF Nos. 171, 172.)  The Plaintiffs have aptly noted authority of this Court to take judicial notice of the SEC Order in its consideration of the pending Motion to Dismiss (ECF No. 159).  (*See* ECF No. 172.)

The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, this Court is satisfied that taking judicial notice of the SEC's Order in this case is appropriate.  The Plaintiffs' allegations in the TAC, read in light of and in combination with the allegations set forth in the SEC's Order, adequately allege violations of federal securities laws.  Accordingly, the Defendants' Motion to Dismiss (ECF No. 159) is DENIED.

**BACKGROUND**

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.)*

2

*Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Plaintiff Brian Breece filed a class action Complaint against Under Armour, Plank, and another executive of the company, Lawrence Molloy on February 10, 2017.  (ECF No. 1.)  After consolidation with other suits filed against Under Armour, Plank, and numerous other defendants, this Court dismissed the Plaintiffs' Consolidated Amended Complaint.  (ECF No. 75.)  On November 16, 2018 the Lead Plaintiff filed a Consolidated Second Amended Complaint for violations of the federal securities laws (ECF No. 78), naming only Under Armour and Plank as Defendants.  That Second Amended Complaint alleged that between September 16, 2015 and January 30, 2017, the Defendants issued a series of false and misleading statements about demand for Under Armour products and the company's financial condition.  (ECF No. 78 ¶¶ 2, 14.)

On August 19, 2019, this Court dismissed the Second Amended Complaint with prejudice.  (ECF No. 98 at 26.)  Judgment was entered on September 9, 2019 (ECF No. 101), and on September 17, 2019, the Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit (ECF No. 102).  Based on the reports of the Wall Street Journal that Under Armour was the subject of SEC investigations, Lead Plaintiff moved on November 18, 2019 for an indicative ruling (ECF No. 105), requesting that this Court grant the Plaintiffs' Motion for Relief from the Court's September 9, 2019 Judgment pursuant to Federal Rule of Civil Procedure 60(b), if the Fourth Circuit remanded for that purpose.  (ECF No. 106.)  On January 22, 2020, this Court granted such request.  (ECF No. 139.)  Accordingly, this Court held that it would permit Lead Plaintiff to file a third amended complaint bringing claims against the Defendants for violations of the Securities Exchange Act of 1934 (the "Exchange Act").  (*Id.*)

On October 14, 2020, the Lead Plaintiff filed the Plaintiffs' Consolidated Third Amended Complaint for violations of the federal securities laws ("TAC") (ECF No. 153) alleging that Defendants Under Armour and Plank misled investors during the Class Period by falsely claiming that consumer demand for the company's products was strong between the third quarter of 2015 and the fourth quarter of 2016. Plaintiffs allege that the Defendants led investors to believe that Under Armour's 26-consecutive quarter 20% year-over-year revenue growth streak was "safely intact," when in reality demand for the company's products was in decline. (ECF No. 153 ¶¶ 148-168.) They claim that Defendants manipulated the company's financial results by pulling sales forward from future quarters and engaged in other allegedly suspect sales practices. (*Id.*) The Plaintiffs assert violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder against Defendants Under Armour and Plank (Count I); violations of Section 20(a) of the Exchange Act, again against both Under Armour and Plank (Count II); and violation of Section 20A of the Exchange Act against solely Defendant Plank (Count III). (*Id.* ¶¶ 412-436.)

On December 4, 2020, the Defendants filed a Motion to Dismiss (ECF No. 159) in which they seek the dismissal of the TAC in its entirety. Their Motion asserts that the TAC generally fails to plead adequate factual details to support the Plaintiffs' claims. (*Id.*) On May 3, 2021, the SEC entered an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("SEC Order"). (*See* Exh. A, ECF No. 171.) The SEC Order states that it determined that instituting cease-and-desist proceedings in this matter was appropriate and that in anticipation of those proceedings,

4

Under Armour submitted an Offer of Settlement, which the SEC accepted.  (*Id.* at I, II.) Under Armour therefore consented to entry of the Order, but did so without admitting or denying the findings of the SEC.  (*Id.* at II.)  The cease-and-desist order was imposed for violation of Sections 17(a)(2) and (3) of the Securities Act of 1933 (the "Securities Act") and Section 13(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rules 13a-1, 13a-11, 13a-13, 12b-20 thereunder, including failing to comply with Item 303(a)(3)(ii) of Regulation S-K.  (*Id.* at III ¶¶ 5, 45-48.)  The SEC Order also included a civil penalty of $9,000,000 subject to Exchange Act Section 21F(g)(3).  (*Id.* at IV ¶ B.)

The SEC Order is based upon the consent of the Defendants without the admission or denial of any findings.  Furthermore, the Order is not dipositive of the issues in this case. Nevertheless, the practice of accelerating sales information is central to the allegations in these consolidated cases.  Accordingly, this "pull forward" practice and its effect on revenue estimates will await further discovery in this case.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain

5

"more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

This Court has noted that a claim for securities fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b). *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 634 (D. Md. 2010). Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). The PSLRA further requires a securities fraud claim to (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted

6

with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u-4(b)(1), (b)(2)).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs*, 551 U.S. at 322). In addition, a court may also "take judicial notice of 'matters of public record' and other information that, under [Federal Rule of Evidence] 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore.*, 791 F.3d 500, 508 (4th Cir. 2015) (citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see* Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). "[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). If a court considers such facts at the motion to dismiss stage, the facts must be construed "in the light most favorable to the plaintiffs." *Zak*, 780 F.3d at 607 (citation omitted).

## ANALYSIS

### I.   Claims under Section 10(b) and Rule 10b–5

Section 10(b) of the Exchange Act prohibits the use of "any manipulative or deceptive device or contrivance" in connection with the sale of a security in violation of SEC rules. 15 U.S.C. § 78j(b). "Rule 10b–5 encompasses only conduct already prohibited by § 10(b)."

7

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).  A typical § 10(b) action requires a plaintiff to prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014 (quoting *Stoneridge*, 552 U.S. at 157).

In their Motion to Dismiss, Defendants Plank and Under Armour assert that the Plaintiffs have simply failed to state a claim for relief under Section 10(b) and Rule 10b–5.  (ECF No. 159-1.)  First, the Defendants assert that the Plaintiffs' core allegations that the Defendants engaged in improper "channel stuffing" are insufficient.  (*Id.* at 8.)  "Channel stuffing" is another term used to describe the practice of pulling forward sales from a future quarter, and is defined by the United States Court of Appeals for the First Circuit as "inducing purchasers to increase substantially their purchases before they would, in the normal course, otherwise purchase products from the company" with the "result of shifting earnings into earlier quarters, quite likely to the detriment of earnings in later quarters."  *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir. 1999).  The Defendants note that "[a]llegations of channel stuffing are, standing alone, insufficient to sustain the state of mind requirement in a securities fraud claim because 'there may be a number of legitimate reasons for attempting to achieve sales earlier' than in the normal course."  *In re Trex Co., Inc. Sec. Litig.*, 212 F. Supp. 2d 596, 608 (W.D. Va. 2002) (quoting *Greebel*, 194 F.3d at 185 (concluding that channel stuffing allegations "[do] not support a strong inference of scienter")).  The Defendants assert that the Plaintiffs have failed to provide adequate details regarding Under Armour's pull forward

8

practice, specifically "dollar amounts or percentages of overall sales," in order to suggest that the Defendants knew or should have known that demand was declining. (ECF No. 159-1 at 2.) The Defendants argue that the Plaintiffs have simply failed to offer any "corroborating details" to support their claims. (*Id.*)

Second, the Defendants assert that the Plaintiffs have failed to plead facts to suggest that the Defendants acted with the requisite scienter, engaging in intentional misconduct or severe recklessness. (ECF No. 159-1 at 26.) To prevail on a securities fraud action, the Plaintiffs must, at a minimum, show "'an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 343 (4th Cir. 2003) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 620 (4th Cir. 1999)). To prevail on a claim against a corporation specifically, the Plaintiffs must allege facts "giving rise to a strong inference that at least one corporate agent acted with the required state of mind." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 189 (4th Cir. 2009).

With respect to the claims against Defendant Plank, the Defendants assert that the TAC repleads many of the same factual allegations provided in the Second Amended Complaint, which this Court found were insufficient to state a claim for relief. (ECF No. 159-1 at 27); *see also Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 462 (D. Md. 2019). The only new pieces of "evidence" provided are emails which allegedly show Defendant Plank was aware of the pull forward sales and accounting practices. (ECF No. 159-1 at 28.) Defendants assert that such new evidence is insufficient, as the Plaintiffs have not adequately alleged that

9

such sales and accounting practices were actually improper. (*Id.*) With respect to the claims against Under Armour, the Defendants assert that the Plaintiffs have failed to plead scienter as to Plank or any of the other corporate agents included in the TAC. (*Id.* at 37.)

Third, the Defendants also contend that the Plaintiffs have failed to adequately plead falsity as required by the Private Securities Litigation Reform Act ("PSLRA"). (*Id.* at 40.) Section 78u–4(b)(1) provides that a plaintiff must allege that the defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u–4(b)(1). The section continues, stating that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* Again, the Defendants assert that the TAC merely realleges the Second Amended Complaint, and that the new allegations included in the TAC fail to cure the deficiencies previously noted by this Court. (ECF No. 159-1 at 40-50.) The Defendants also assert that certain forward-looking statements are protected by the PSLRA "safe harbor," which provides that "projections of future performance not worded as guarantees are generally not actionable under federal securities laws." (*Id.* at 44 (citing *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993)).)

On January 29, 2021, the Plaintiffs filed a Response in Opposition to the Defendants' Motion to Dismiss, asserting that the TAC and the evidence incorporated into the TAC adequately allege a plausible claim for relief. (ECF No. 162.) On May 7, 2021, the Plaintiffs

10

filed correspondence with this Court supplementing their Opposition in light of the SEC Order issued on May 3, 2021. (ECF No. 172.) The Plaintiffs now ask this Court to take judicial notice of the SEC Order. (*Id.*) As noted above, this court may, consistent with Rule 201 of the Federal Rules of Evidence, take judicial notice of relevant facts that are "not subject to reasonable dispute" when such facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). There is no dispute with respect to the accuracy of the SEC Order. The Plaintiffs also provide numerous examples of cases in which courts have taken judicial notice of similar SEC cease-and-desist orders. (*See* ECF No. 172 (citing I*n re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 3495 (AT) (BCM), 2017 WL 4049253, at *4 (S.D.N.Y. June 28, 2017*); In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967(LMM), 2010 WL 2541166, at *13-14 (S.D.N.Y. June 10, 2010); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 12-cv-00993, 2016 WL 7117455, at *6 (M.D. Pa. Dec. 7, 2016)).) Taking judicial notice of the SEC Order is permissible and appropriate in this case.

Taking into consideration the facts alleged in the SEC Order, this Court is satisfied that the Plaintiffs' allegations survive the Defendants' Motion to Dismiss. To be clear, the SEC Order does not supply dispositive evidence in this case—as the Order clearly states, the SEC's findings "are not binding on any other person or entity in this or any other proceeding." (Exh. A at n.1, ECF No. 171.) Nevertheless, the SEC Order lends support to the allegations of the Plaintiffs in this case. With respect to the Plaintiffs' allegations regarding the pull forward sales practices, or "channel stuffing," the SEC Order provides specific factual allegations regarding the amount of the products pulled forward and concludes that because of the

11

undisclosed pull forward tactics used, investors "were left with a misleading impression of how Under Armour was meeting or beating analysts' revenue estimates." (*Id.* at III. ¶¶ 3, 13-38, 42-43.) The SEC found that "Under Armour's reported financial results . . . did not reflect its natural revenue and revenue growth, and were not indicative of its future financial results." (*Id.* at III ¶ 41.) Such allegations undermine the Defendants' first argument for dismissal.

The Defendants have aptly noted that unlike under Section 10(b), a finding of liability under Sections 17(a)(2) and (3) does not require scienter and may rest on a finding of negligence. (Exh. A at III ¶ 46, ECF No. 171 (citing *Aaron v. SEC*, 446 U.S. 680, 685, 701-02 (1980)).) Nevertheless, the SEC's decision not to plead scienter does not impede the Plaintiffs' ability to plead a strong inference of scienter in this case. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 n.5 (9th Cir. 2012) ("We draw no inference from the SEC's decision not to plead scienter or charge defendants with fraud. The district court erred in concluding that 'the SEC's decision not to plead scienter hurts plaintiffs' ability to plead a strong inference of scienter.'"). Despite containing no finding on the issue of scienter, the SEC's Order includes specific allegations that the company and its top officials, including then-CEO Defendant Plank, were aware of the potential misleading nature of the undisclosed pull forward sales practices.

Again, this Court notes that the SEC Order does not provide dispositive evidence in this case. Nevertheless, the SEC's findings allege factual details which may support the Plaintiffs' allegations in the TAC with respect to scienter. In *Southeastern Pennsylvania Transportation Authority*, the district court described the scienter standard a plaintiff must meet to survive a motion to dismiss, stating that a plaintiff must allege "specific facts demonstrating

12

how the Exchange Act Defendants knew—or were at least reckless as to their knowledge—that the relevant [statements or omission] were false at the time they were made." 2016 WL 7117455, at *21 (citing *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 620 (E.D. Pa. 2009)). The court found that although the scienter allegations of the operative complaint "largely mirror[ed]" those contained in a previously dismissed complaint, a "recently-issued SEC Order, of which the Court [had] taken judicial notice, provide[d] additional factual information as to how certain of the Exchange Act Defendants knew—or were at least reckless as to their knowledge—that the relevant representations as to financial reporting were false and/or misleading at the time they were made." *Id.* Upon review of the TAC, the briefs and correspondence filed by the parties, the SEC Order, and "assessing all of [the Plaintiffs'] allegations 'holistically,' as the Court is required to do when assessing scienter," *id.* at *22 (citing *Tellabs*, 557 U.S. at 326), this Court is satisfied that the Plaintiffs have alleged facts supporting a strong inference of scienter in order to state a plausible claim for relief under the Exchange Act against both Defendants.[1]

Finally, the SEC Order provides support for the Plaintiffs' allegations with respect to falsity. The SEC Order specifically alleges that:

> As a result of Under Armour's failure to disclose the impact of its pull forward practice on revenue growth, Under Armour's public statements were materially misleading. In particular, throughout the Relevant Period, Under Armour made positive statements regarding its revenue growth rate and the factors contributing to the revenue growth rate without disclosing the significant impact on revenue from its use of pull forwards. Under Armour also failed to

---

[1] This Court's holding on scienter with respect to Defendant Plank may be supported not only by allegations regarding senior management and executives included in the SEC Order, but also specific allegations in the TAC considered in light of the Order, including Plank's statements acknowledging his access to company data and forecasts (ECF No. 153 ¶¶ 106-111), his alleged attendance and participation in company meetings (*id.* ¶¶ 120-23), and his entry into a Rule 10b5-1 trading plan in November 2016 and April 2016 through which he sold $138.2 million in Under Armour stock (*id.* ¶¶ 124-35).

13

>disclose that the sales that had been pulled forward were no longer available in the future quarter.

(Exh. A. at III ¶ 4, ECF No. 171.) The Order specifically notes that by the third quarter of 2015, Under Armour was aware that its full-year internal projections for revenue were much lower than the late-2014 forecast had predicted. (*Id.* at III ¶ 13.) The company saw a $120 million decline in sales projections for its largest market category, North American wholesale apparel. (*Id.* at III ¶ 13.) Yet, Under Amour continued to report its financial results without disclosing its use of pull forward sales and their effect on future revenue and growth. (*Id.* at III ¶ 42.) The SEC did not suggest that any of the company's statements were protected by the PSLRA safe harbor. It focused on Under Armour's omission of information regarding the pull forward sales practices potentially hindering an investor's ability "to evaluate Under Armour's future revenue and ability to meet future guidance and analysts' revenue expectations." (*Id.* at III ¶ 44.)

These allegations, combined with the allegations included in the TAC, are sufficient to state a plausible claim that the Defendants "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u–4(b)(1). The SEC Order and the TAC together "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *Id.*

## II.   Claims under Sections 20(a) and 20A

Section 20(a) provides for derivative liability for those who control others found to be primarily liable under the Exchange Act. 15 U.S.C. § 78t(a). A claim of control person liability must allege a predicate violation of Section 10(b). *In re Mun. Mortg. & Equity, LLC Sec. &*

14

*Derivative Litig.*, 876 F. Supp. 2d 616, 647 (D. Md. 2012).  Section 20A provides for a private right of action to buyers and sellers of securities who trade "contemporaneously" with an insider in possession of material nonpublic information.  15 U.S.C. § 78t–1(a).  "Like a claim for control person liability asserted under § 20(a), a § 20A claim must contain a well-pled predicate violation of the Exchange Act." *In re E. Spire Comms., Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 750 (D. Md. 2001).

Defendants contend that the Plaintiffs have failed to adequately allege a claim under Section 10(b) and Rule 10b–5, and therefore, the Sections 20(a) and 20A claims must be dismissed.  (ECF No. 159-1 at 50.)  As described above, however, this Court is satisfied that the Plaintiffs have adequately alleged their claims under Section 10(b) and Rule 10b–5.  Further, the Plaintiffs have alleged that they purchased Under Armour stock during the Class Period contemporaneously with Plank's trades when he was allegedly in possession of material, non-public information concerning Under Armour's suspect sales and accounting practices, as required for a Section 20A claim.  For these reasons, the Plaintiffs have stated a plausible claim for relief under Section 20(a) and Section 20A.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 159) is DENIED.

A Separate Order follows.


Dated: May 18, 2021

                                                                     _____/s/_____
                                                          Richard D. Bennett
                                                          United States District Judge